UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INDIGENOUS PEOPLE OF BIAFRA,<br><br>            Plaintiff,<br><br>       v.<br><br>IVAN SASCHA SHEEHAN, et al.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 21-2743 (RBW)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

The plaintiff, Indigenous People of Biafra, brings this civil action against the defendants, Ivan Sheehan and The Washington Times, LLC ("The Times"), see Complaint ("Compl.") at 1, ECF No. 1, asserting common law claims of defamation, see id. ¶¶ 27–110. Currently pending before the Court are (1) Sheehan's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), see Motion by Defendant Ivan Sascha Sheehan To Dismiss Plaintiff's Complaint ("Sheehan's Mot." or "Sheehan's motion") at 1, ECF No. 13; (2) The Times's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), see Defendant The Washington Times, LLC's Motion to Dismiss ("The Times's Mot." or "The Times's motion") at 1, ECF No. 14; and (3) the plaintiff's two motions for leave to file supplemental authorities, see Plaintiff's Motion to Submit Supplemental Authority ("Pl.'s 1st Supp. Auth. Mot.") at 1, ECF No. 19; Plaintiff's Motion to Submit Supplemental Authority ("Pl.'s 2d Supp. Auth. Mot.") at 1, ECF No. 20. Upon careful consideration of the parties' submissions,[1] the Court concludes for

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Professor Sheehan's Motion to Dismiss ("Sheehan's Mem."), ECF No. 13-1; (2) the Plaintiff's Memorandum in Opposition to Defendant Sheehan's Motion to Dismiss ("Pl.'s Opp'n to Sheehan"), ECF No. 15; (3) the Reply Memorandum in Further Support of Professor Sheehan's Motion to Dismiss ("Sheehan's Reply"), ECF No. 18; (4) the Declaration of Ivan Sascha Sheehan in

(continued . . .)

the following reasons that it must grant The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(1); deny as moot The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(6); <u>sua sponte</u> dismiss the claims against Sheehan pursuant to Rule 12(b)(1); and deny as moot the plaintiff's two motions for leave to file supplemental authorities.

## I.   BACKGROUND

### A.   Factual Background

The plaintiff is a "[c]ommunity [i]nterest [c]ompany[,]" registered in the United Kingdom and "headquartered in London," whose "mission is to secure a sovereignty referendum on Biafra[2] to be organized and conducted by the United Nations by peaceful means."  Compl. ¶ 4.  On October 4, 2021, The Times, "a newspaper company published in Washington, D.C.[,]" <u>id.</u> ¶ 7, published an Op-Ed by Sheehan ("the Article"),[3] <u>id.</u> ¶ 8, "the executive director of the School of Public and International Affairs at the University of Baltimore[,]" <u>id.</u> ¶ 5, titled "U[nited States] ignores small African terrorist group at its peril[,]" <u>id.</u> ¶ 8.  In the article, <u>see</u> Sheehan's Mot., Exhibit ("Ex.") A (Sheehan, U.S. ignores small African terrorist group IPOB at its peril, Wash Times (Oct. 4, 2021) ("Article")) at 1, ECF No. 13-3, Sheehan argues that the "State Department needs to designate [the plaintiff] as a foreign terrorist organization[,]" <u>id.</u> at 2,

---

(. . . continued)
Support of Defendant's Motion to Dismiss ("Sheehan Decl."), ECF No. 13-2; (5) the Memorandum of Points and Authorities in Support of The Washington Times, LLC's Motion to Dismiss ("The Times's Mem."), ECF No. 14-1; (6) the Plaintiff's Memorandum in Opposition to Defendant The Washington Times' Motion to Dismiss ("Pl.'s Opp'n to The Times"), ECF No. 16; (7) the Defendant The Washington Times, LLC's Reply Brief in Further Support of its Motion to Dismiss ("The Times's Reply"), ECF No. 17; (8) Sheehan's Opposition to Plaintiff's Motion to Submit Supplemental Authority ("Sheehan's Supp. Auth. Opp'n"), ECF No. 21; and (9) the Defendants' Opposition to Plaintiff's Motion to Submit Supplemental Authority ("The Times's Supp. Auth. Opp'n"), ECF No. 22.

[2] The "Biafra homeland[]," <u>see</u> Pl.'s Opp'n to The Times at 8, is comprised of "five Igbo-majority regions in south[]eastern Nigeria[,]" <u>id.</u> at 6.

[3] The Article was published digitally on October 4, 2021, and in print on October 5, 2021.  <u>See</u> Pl.'s Opp'n to Sheehan at 3.

and makes multiple claims regarding "violent [ ] attacks" allegedly carried out by the plaintiff, id. at 5. According to the plaintiff, "[t]he article contained [seven] defamatory falsehoods about [the plaintiff that were] published with ill will and with knowledge of their falsity or with reckless disregard [for] whether they were true[.]" Compl. ¶ 9. These purported "defamatory falsehoods [allegedly] subjected [the plaintiff] to professional and social ostracism and curtailment of its ability to attract members and donations[,]" id. ¶ 26, as well as "damage to [the p]laintiff's reputation in an amount to be proven at trial[,]" id. ¶¶ 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 93, 97, 101, 105, 109.

**B.    Procedural History**

On October 17, 2021, the plaintiff filed its Complaint in this case, see Compl. at 16, asserting twenty-one counts of defamation, see id. ¶¶ 27–110. On December 14, 2021, both defendants filed their motions to dismiss. See The Times's Mot. at 1; Sheehan's Mot. at 2. On January 10, 2022, the plaintiff filed its oppositions to both motions. See Pl.'s Opp'n to The Times at 1; Pl.'s Opp'n to Sheehan at 1. On January 25, 2022, Sheehan filed his reply in support of his motion, see Sheehan's Reply at 1, and on January 18, 2022, The Times filed its reply in support of its motion, see The Times's Reply at 1.

On March 11, 2022, the plaintiff filed its first motion for leave to file supplemental authority in support of its opposition to the motions to dismiss, which constituted a copy of what it represents is a "defamation opinion issued by the Supreme Court of New York on March 8, 2022," in "Smartmatic U.S. Corp. v. Fox Corporation[.]" Pl.'s 1st Supp. Auth. Mot. at 1.[4] On August 13, 2022, the plaintiff filed its second motion for leave to file additional supplemental

---

[4] Although the plaintiff represents that "[a] copy of the opinion is appended" to its first motion for leave to file a supplemental authority, Pl.'s 1st Supp. Auth. Mot. at 1, the attached one-page document is illegible as half of the page is obscured by a metadata panel, see id., Exhibit ("Ex.") 1 (Smartmatic v. FOX – Order on MTD – 3-8-2022) at 1, ECF No. 19-1.

3

authority, which constituted a copy of "a July 20, 2022[] Opinion of the United Nations Human Rights Council Working Group on Arbitrary Detention[.]"  Pl.'s 2d Supp. Auth. Mot. at 1; see id., Ex. 1 (Hum. Rts. Council, Working Grp. on Arbitrary Det., Op. No. 25/2022 concerning Mr. Nwannekaenyi Nnamdi Kenny Okwu-Kanu (Nigeria and Kenya), U.N. Doc. A/HRC/WGAD/2022/25 (July 20, 2022)) at 1, ECF No. 20-1.  On August 29, 2022, both defendants filed oppositions to the plaintiff's second motion for leave to file supplemental authority.  See Sheehan's Supp. Auth. Opp'n at 1; The Times's Supp. Auth. Opp'n at 1.

## II.     STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, "the plaintiff bears the burden of pro[ving]" that the Court has jurisdiction over the plaintiff's claims, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  Additionally, "subject matter jurisdiction may not be waived, and . . . courts may raise the issue sua sponte."  Poblete v. U.S. Marshals Service, 207 F. Supp. 3d 1, 2 (D.D.C 2016), quoting NetworkIP, LLC v. FCC, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal citations omitted).  "Indeed, a federal court must raise the issue[.]"  Poblete, 207 F. Supp at 2.

In deciding a motion to dismiss based upon a lack of subject-matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal

4

Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

### III.   ANALYSIS

The Court will first consider The Times's motion to dismiss, before addressing Sheehan's motion to dismiss.[5]  For the following reasons, the Court will grant The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(1); deny as moot The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(6); deny as moot Sheehan's motion to dismiss; and deny as moot the plaintiff's two motions for leave to file supplemental authorities.

**A.   The Times's Motion to Dismiss**

The Times argues that the Court "should dismiss [the] Complaint pursuant to Rule 12(b)(1) for lack of [s]ubject[-m]atter jurisdiction because [the p]laintiff cannot satisfy the amount[-]in[-]controversy requirements of diversity jurisdiction."  The Times's Mem. at 7

---

[5] The plaintiff's motions for leave to file supplemental authority will be considered in conjunction with the motions to dismiss.

5

(capitalization omitted).  The plaintiff argues in response that it has met the amount-in-controversy requirement due to (1) "the financial death penalty IPOB would suffer, if as [the d]efendant and [sic] states and argues, IPOB is listed by the Secretary of State as a foreign terrorist organization[,]" Pl.'s Opp'n to The Times at 14–15, which "clearly exceeds $75,000 in value," id. at 15, as "[i]t would prohibit any material assistance to IPOB indefinitely[,]" id.; and (2) punitive damages, see id.  The Court agrees with The Times that it lacks jurisdiction over the plaintiff's Complaint.

"Diversity jurisdiction requires an amount-in-controversy exceeding $75,000 and . . . a dispute between citizens of a State and citizens or subjects of a foreign state."  BYD Co. Ltd. v. All. for Am. Mfg., 554 F. Supp. 3d 1, 6 (D.D.C. 2021) (quoting 28 U.S.C. § 1332(a)).  "In determining whether an action meets" the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a), "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."  Bronner v. Dugan, 364 F. Supp. 3d 9, 17 (D.D.C. 2019) (citations omitted).  Although "a plaintiff need not provide an exact valuation or detailed breakdown of damages at the outset of litigation, . . . it does not follow that any unsupported claim will suffice[,]" and dismissal is "warranted if . . . the [party] submits no . . . evidence supporting [its] alleged injury."  Bronner ex rel. Am. Stud. Ass'n v. Duggan, 962 F.3d 596, 610 (D.C. Cir. 2020) (emphasis in original) (internal citations omitted).  However, because "the law is generous to plaintiffs on amounts[-]in[-]controversy," BYD Co. Ltd., 554 F. Supp. at 7, courts will dismiss a plaintiff's action for failure to satisfy the amount-in-controversy requirements only if it appears "to a legal certainty that [the p]laintiff's claims are really for less than the jurisdictional amount."  Bronner, 364 F. Supp. 3d at 17 (quoting St. Paul Mercury Indem. Co. v. Red Cab Bo., 303 U.S. 283, 288 (1938)).  Here, the plaintiff alleges in its Complaint that the Op-Ed subjected it to (1)

reputational damages, see Compl. ¶¶ 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 93, 97, 101, 105, 109; (2) "professional and social ostracism," id. ¶ 26; and (3) "curtailment of its ability to attract members and donations," id.

The Court starts its analysis noting that because the plaintiff is a company, and "a co[mpany] suing for defamation . . . may only recover damages in the form of lost profits," see Art-Metal U.S.A., Inc. v. United States, 753 F.2d 1151, 1156 (D.C. Cir. 1985) (internal citations omitted), it "cannot rely on reputational damages to establish jurisdiction[,]" BYD Co. Ltd., No. 20-cv-3458 (TNM), 2021 WL 1564445, at *2 (D.D.C. April 21, 2021). See id. (holding that a corporation "cannot rely on reputational damages to establish jurisdiction." Rather, as already noted, a company "may only recover actual damages in the form of lost profits."). Accordingly, absent a showing that the harm to the plaintiff's reputation resulted or will result in lost profits, neither the plaintiff's allegations of reputational damages, see Compl. ¶¶ 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 93, 97, 101, 105, 109, nor its allegations of "professional and social ostracism," id. ¶ 26, a form of reputational damage, contribute to satisfying the $75,000 threshold for diversity jurisdiction.

Furthermore, the Court concludes that the plaintiff has not alleged any potential "lost profits[,]" BYD Co. Ltd., 2021 WL 1564445, at *2, sufficient to meet the $75,000 threshold. Although the plaintiff makes a generalized theoretical assertion that "the amount[-]in[-]controversy exceeds $75,000," Compl. ¶ 1, and that "[t]he intent and effect of [the allegedly] defamatory falsehoods [ ] subjected [the plaintiff] to . . . curtailment of its ability to attract members and donations[,]" id. ¶ 26, it does not provide any allegations as to how the "curtailment of its ability to attract members and donations[,]" id., will or has resulted in lost profits. See generally id. Indeed, the Complaint provides no "further factual development as to

7

actual losses or even potential losses." Hindu Am. Found. v. Viswanath, No. 21-cv-1268 (APM), 2022 WL 782389, at *2 (D.D.C. Mar. 15, 2022); see id. (holding that the Hindu American Foundation had not met the amount-in-controversy requirement when it merely asserted that "it ha[d] lost and/or expended and/or will lose and/or expend at least $75,000 as a result of [the alleged] events[;]" "it ha[d] suffered, or w[ould] suffer, lost donations in an amount to be proven at trial, and which exceed[ed] $75,000[;]" and "the challenged conduct ha[d] injured and w[ould] cause further substantial injury to [its] reputation and ability to fundraise"). The plaintiff asserts in its opposition to The Times's motion that "the amount[-]in[-]controversy includes, among other things, the financial death penalty [that it] would suffer" in the event that it was "listed by the Secretary of State as a foreign terrorist organization[,]" which "clearly exceeds $75,000." Pl.'s Opp'n to The Times at 14–15. However, like its Complaint, the plaintiff's opposition "contains [no] further factual development" beyond this speculative assertion, Hindu Am. Found, 2022 WL 7822389, at *2, that would enable the Court to conclude that the alleged "financial death penalty" "exceeds $75,000[,]" Pl.'s Opp'n to The Times at 14. See generally id. at 13–15. Instead, the plaintiff's "theory appears to be based on a speculative expectation that it may lose donations at some undefined future time[,]" and thus "the [C]ourt is left questioning whether [the p]laintiff has lost anything at all." Hindu Am. Found, 2022, WL 7822389, at *2.

  Finally, the plaintiff argues that its potential award of "punitive damages . . . must [also] be considered . . . in determining [the] jurisdictional amount." Pl.'s Opp'n to The Times at 14 (quoting Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 240 (1943)). However, even assuming that an award of punitive damages would be appropriate, the plaintiff has failed to provide any basis on which to conclude that a punitive damages award would exceed $75,000.

See generally Compl.; Pl.'s Opp'n to The Times. "In applying the legal certainty test where the availability of punitive damages is the sine qua non of federal jurisdiction[,] a District Court should scrutinize [a] punitive damage[s] claim to ensure that it has at least a colorable basis in law and fact." Kahal v. J.W. Wilson & Assocs., Inc., 673 F.2d 547, 549 (D.C. Cir. 1982). "Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims." Id. Moreover, "the Supreme Court has sharply restricted the size of punitive damages awards, stating that few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Szymkowicz v. Frisch, No. 19-cv-3329 (BAH), 2020 WL 4432240, at *5 (D.D.C. July 31, 2020) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 501 (2008)) (internal quotation marks omitted); see State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003) (stating that punitive damages "of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety"). As noted above, the plaintiff has not shown a non-speculative basis in either its Complaint or its opposition for even a non-de minimis award of compensatory damages. See generally Compl.; Pl.'s Opp'n to The Times. Consequently, even when adding a potential punitive damages award of four times, see State Farm, 538 U.S. at 425—or even ten times, as requested by the plaintiff, see Compl. at 16—to the amount of non-speculative compensatory damages the plaintiff has factually shown can be awarded in this case, the plaintiff "still falls short of satisfying the amount-in-controversy requirement[,]" BYD Co. Ltd., 2021 WL 1564445, at *4. See Symkowicz v. Frisch, 2020 WL 4432240, at *9 ("[F]our—or, for that matter, ten, times a de minimus amount is still less than $75,000.").

9

Because the plaintiff has offered little more than a "bare-bones assertion of jurisdictional sufficiency to suggest that the monetary damages arising from [the plaintiff's] . . . claims even remotely approach $75,000[,]" Bronner, 962 F.3d at 610, the Court concludes that the plaintiff has failed to establish diversity jurisdiction and thus the Court lacks subject-matter jurisdiction. Accordingly, the Court will grant The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(1), deny as moot The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(6), and dismiss the plaintiff's claims against The Times.

**B.     Sheehan's Motion to Dismiss**

The Court next turns to Sheehan's motion to dismiss. In his motion, Sheehan "move[s] to dismiss the Complaint pursuant to Rules 12(b)(2) and 12(b)(6)[,]" asserting that (1) "the Court does not have personal jurisdiction over" him under the District of Columbia's long-arm statute because "he did not cause tortious injury in the District 'by an act or omission in the District[,]'" and (2) the Complaint "fail[s] to state a claim upon which relief can be granted[.]" Sheehan's Mem. at 3.

Although Sheehan does not move for dismissal pursuant to Rule 12(b)(1) in its motion and supporting memorandum, see generally Sheehan's Mot.; Sheehan's Mem., in his reply, he "adopts by reference the arguments advanced by The [ ] Times" in The Times's memorandum, "including the argument that this Court lacks subject[-]matter jurisdiction, which appl[ies] with equal force to the claims asserted by [the p]laintiff against [ ] Sheehan[,]" Sheehan's Reply at 2 n.2. "The fundamental question of whether a federal court lacks subject[-]matter jurisdiction may be raised by a court on its own initiative, or by a party, at any stage of litigation." Eisenbeiser v. Chertoff, 448 F. Supp. 2d 106, 109 (D.D.C. 2006) (citing Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). And, as diversity jurisdiction is the sole basis upon which the plaintiff

10

asserts that this Court has subject-matter jurisdiction in this case, including the plaintiff's claims against Sheehan, see Compl. ¶ 1, the Court's conclusion that the plaintiff has failed to allege that the amount-in-controversy exceeds $75,000, see supra Section III.A, requires dismissal of the plaintiff's Complaint as to its claims against Sheehan as well.  Accordingly, the Court having already concluded that it must dismiss the plaintiff's Complaint for failure to satisfy the amount-in-controversy requirement, the Court concludes that the plaintiff's claims against Sheehan must also be dismissed.[6]

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(1); deny as moot The Times's motion to the extent that it seeks dismissal pursuant to Rule 12(b)(6); sua sponte dismiss the claims against Sheehan pursuant to Rule 12(b)(1); and deny as moot the plaintiff's two motions for leave to file supplemental authorities.[7]

**SO ORDERED** this 30th day of November, 2022.[8]

REGGIE B. WALTON
United States District Judge

---

[6] Because both of the supplemental authorities for which the plaintiff sought leave to file concern whether the plaintiff's Complaint fails to state a claim under Rule 12(b)(6) and not whether the Court lacks jurisdiction under Rule 12(b)(1), see Pl.'s 1st Supp. Auth. Mot. at 1 (stating that the supplemental authority concerns "the issue of whether [it] adequately alleged actual malice and false statements of fact"); Pl.'s 2d Supp. Auth. Mot. at 1 (stating that the supplemental authority "bears on the falsity of the [d]efendants' assertion that [the p]laintiff should be listed as a foreign terrorist organization under United States law"), the Court will deny both motions as moot.

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.